IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALONZO MORRIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 07-658-JJF |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social | : | |
| Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

_____

Karen Y. Vicks, Esquire of THE LAW OFFICE OF KAREN Y. VICKS, LLC,
Dover, Delaware.
Attorney for Plaintiff.

David C. Weiss, Esquire, Acting United States Attorney, and
Patricia A. Stewart, Esquire, Special Assistant United States
Attorney, of the OFFICE OF THE UNITED STATES ATTORNEY,
Wilmington, Delaware.
Of Counsel:  Michael McGaughran, Esquire, Regional Chief Counsel;
Elizabeth Corritore, Esquire, Assistant Regional Counsel, of the
SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania.
Attorneys for Defendant.

_____

**MEMORANDUM OPINION**

June 12, 2009
Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court is an appeal pursuant to 42 U.S.C. § 405(g) filed by Plaintiff, Alonzo Morris, seeking review of the final administrative decision of the Commissioner of the Social Security Administration (the "Administration") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, for the time period predating April 17, 2006.  However, the Commissioner found that Plaintiff was disabled as of April 17, 2006, through the date of his decision, and authorized supplemental security income ("SSI") under Title XVI, 42 U.S.C. § 1381-1383f, for that time period.  Plaintiff has filed a Motion For Summary Judgment (D.I. 8) requesting the Court to reverse the decision of the Commissioner and remand this matter to the Administration for further administrative proceedings.  In response to Plaintiff's Motion, Defendant has filed a Cross-Motion For Summary Judgment (D.I. 13) requesting the Court to affirm the Commissioner's decision.  For the reasons set forth below, Defendant's Cross-Motion For Summary Judgment will be denied, and Plaintiff's Motion For Summary Judgment will be granted.  The decision of the Commissioner dated November 21, 2006, will be reversed and this matter will be remanded to the A.L.J. for further findings and/or proceedings consistent with this decision.

1

**BACKGROUND**

## I.   Procedural Background

Plaintiff filed applications for DIB and SSI on March 8, 2002, alleging disability since March 18, 2001, due to bipolar disorder, attention deficit disorder, chronic obstructive pulmonary diseases ("COPD"), lumbar spine problems, and left hip problems including hip replacement surgery and arthritis. (Tr. 46).  Plaintiff's application was denied initially and upon reconsideration.  (Tr. 27-30).  Thereafter, Plaintiff requested a hearing before an administrative law judge (the "A.L.J.").  (Tr. 31).  On November 21, 2006, the A.L.J. issued a decision denying Plaintiff's application for DIB and SSI.  (Tr. 9-21).  Following the unfavorable decision, Plaintiff timely appealed to the Appeals Council.  (Tr. 7-8).  On August 23, 2007, the Appeals Council denied Plaintiff's request for review (Tr. 4-6), and the A.L.J.'s decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000).

After completing the process of administrative review, Plaintiff filed the instant civil action pursuant to 42 U.S.C. § 405(g) seeking review of the A.L.J.'s decision denying his claims.  In response to the Complaint, Defendant filed an Answer (D.I. 3) and the Transcript (D.I. 5) of the proceedings at the administrative level.

Thereafter, Plaintiff filed a Motion For Summary Judgment and Opening Brief in support of the Motion.  In response, Defendant filed a Cross-Motion For Summary Judgment and a Combined Opening Brief in support of his Cross-Motion and Opposition to Plaintiff's Motion requesting the Court to affirm the A.L.J.'s decision.  Plaintiff has filed a Reply Brief. Accordingly, this matter is fully briefed and ready for the Court's review.

## II.  Factual Background

A.   Plaintiff's Medical History, Condition and Treatment

At the time of the A.L.J.'s decision, Plaintiff was fifty-five years old.  (Tr. 19, 40).  Plaintiff has a GED and one year of college education.  He has past work experience as a construction worker, a welder, and a construction manager. (Tr. 441-442).  Plaintiff alleges disability since March 18, 2001. Plaintiff's detailed medical history is contained in the record; however, the Court will provide a brief summary of the pertinent evidence.

1.   Physical Impairments

Plaintiff has bilateral degenerative arthritis in his hips stemming from a thirty foot fall in 1987.  He began to experience severe hip pain in 2000, and was walking with a limp.  (Tr. 152, 153).  In 2001, he presented to Donald Pfeifer, M.D. and was diagnosed with left hip pain.  He was prescribed Naprelan, an

3

anti-inflammatory.   (Tr. 155).   An MRI of his hip revealed a
small unexplained joint effusion, but no evidence of marrow
edema.   X-rays were negative and a left hip aspiration obtained
no fluid.   (Tr. 152, 153, 158).   On follow-up visits, Pliant had
some left hip muscle spasms, but no deformity or swelling.   He
also received a hip injection which resulted in full-hip
extension.   Dr. Pfeifer recommended physical therapy.   (Tr. 151-
152).

In April 2002, Thomas Gillespie, M.D., diagnosed Plaintiff
with snapping hip syndrome and osteoarthritis.   (Tr. 172).
Plaintiff underwent physical therapy and a TENS unit was used.
(Tr. 169).

On July 23, 2003, Plaintiff underwent a left hip replacement
performed by Wilson Choy, M.D.   Six-weeks post-operative, Dr.
Choy observed "excellent" left hip range of motion, and Plaintiff
reported to Dr. Choy that "[t]his is the best that he has felt in
10 years."   (Tr. 206).   Dr. Choy recommended aquatic therapy to
work on Plaintiff's iliopsoas muscles and prescribed Celebrex and
Vicodin.   (Tr. 206).

By November 2003, Plaintiff was no longer taking a narcotic
pain medication.   On examination, he had excellent passive hip
range of motion and full leg extension.   (Tr. 205).   By June
2004, a year after the operation, Dr. Choy reported that
Plaintiff was doing well and that his groin pain had improved.

X-rays revealed "excellent" ingrowth of the left hip prosthesis,
and Dr. Choy felt that no further intervention was required.
Plaintiff was to report back in a year.  (Tr. 300).

In 2005, Plaintiff reported to the Veteran's Administration
("VA") clinic with hip pain and low back pain.  Plaintiff's
straight leg raising test was positive causing pain in the groin
and low back that radiated into Plaintiff's leg.  X-rays showed
mild degenerative hypertrophic spurring involving all the lumbar
vertebral bodies and no evidence of loosening of the hip
prosthesis.  Plaintiff was fitted for a cane in August 2005.  In
October 2005, Plaintiff reported continued low back pack pain.
On examination, Plaintiff had limited lumbar spine range of
motion, negative straight leg raising test and full and intact
motor strength and sensation.  The VA physician ordered a back
brace and gave Plaintiff some stretching exercises.  (Tr. 388,
390, 392, 397-402).

In June 2006, Plaintiff underwent a CT scan of the lumbar
spine, which revealed disc bulging at L3-4 and L4-5, with no
focal disc herniation, mild bilateral facet joint degenerative
changes from L3-4 through L5-S1, but no evidence of spinal
stenosis.  (Tr. 381).

2.   Mental Impairments

Plaintiff has been diagnosed with a variety of mental
disorders at varying times throughout his medical history,

including bipolar disorder, personality disorder, mood disorder
with suicidal ideation, depression, anxiety, substance abuse and
borderline personality with anti-social features.  (Tr. 100, 102,
104, 107, 113, 118-119, 121-122, 126, 137-139, 167, 182, 184,
192, 194, 196-197, 202-203, 244, 260, 264-266, 390).  Plaintiff
has also had global assessment of functioning ("GAF") scores
ranging from 45 to 60.  (Tr. 138, 165-167).  Plaintiff has also
been prescribed medications, which he reported provided him with
some benefit; however, the dispensing of his medication was
regulated by his physicians more closely once he reported drug
abuse.  Doctors also recommended that he attend group therapy.
(Tr. 178, 181).

In March 2002, Plaintiff saw Dr. Fiscella of the VA clinic
for an appointment.  Dr. Fiscella noted that Plaintiff was
"invested in proving to me that he was psychiatrically disabled
and needed financial assistance."  (Tr. 176).  According to
Plaintiff he could not work because of violent tendencies.  Dr.
Fiscella reviewed a briefcase full of medical records that
Plaintiff brought with him and concluded that it was "quite clear
that [Plaintiff] has a long [history] of substance abuse,
probably does not have bipolar disorder, and most likely has
antisocial personality disorder with borderline traits."  (Tr.
176).  Dr. Fiscella informed Plaintiff that he was not disabled
for purposes of receiving financial assistance and refused to

provide Plaintiff with written statements regarding his ability to work.  Dr. Fiscella also refilled Plaintiff's medications but expressed doubt that they would benefit Plaintiff.  (Tr. 176).

    3.    State Agency Assessments

In July 2002, Plaintiff reported to the Division of Rehabilitation Services in Maryland to assess his functional abilities.  Based on a physical therapy evaluation, Plaintiff was limited to sedentary work.  (Tr. 254-255).

Plaintiff's mental residual functional capacity was reviewed in September 2002, by a state agency psychologist, Jonathan Rightmyer, Ph.D.  Dr. Rightmyer concluded that Plaintiff could perform simple, routine tasks.  (Tr. 271-273).

Also in 2002, state agency disability physicians reviewed Plaintiff's physical capacity and concluded that he retained the residual functional capacity for medium work requiring only occasional postural movements. (Tr. 275-297).

    B.    The A.L.J.'s Decision

At the hearing, Plaintiff was represented by counsel and provided testimony regarding his impairments.  Plaintiff testified that he drives locally and has no difficulties reading or writing.  Plaintiff also testified to hip pain, mood swings, difficulty sleeping, confusion and controlled high blood pressure.  He indicated that he suffers from COPD and takes medications for that as well as his other conditions.  Plaintiff

testified that the medication affects his taste.   Plaintiff also
testified that he has a cane, but does not use it every day even
though he should.   Plaintiff further testified that he smokes,
but is trying to quit.   (Tr. 421-441).

The A.L.J. asked the vocational expert to assume a
hypothetical person with Plaintiff's age, education and
impairments including degenerative disc disease, COPD, high blood
pressure, left hip problems and replacement, osteoarthritis,
depression with a bipolar component and mood swings and with some
relief from medications without significant side effects.
Consistent with the testimony of Plaintiff, the A.L.J. also added
that this person could lift ten pounds frequently and twenty
pounds occasionally.   (Tr. 443-444).   The A.L.J. further
instructed the vocational expert that this person "can sit for 30
minutes, stand for 20 minutes, walk for 30 minutes, on an
alternate basis during an eight hour day; and have to avoid
prolonged climbing, balancing, and stooping, temperature/humidity
extremes, heights, and moving machinery, vibrations; and perhaps,
due to his mild depression, jobs that are low-stress in nature,
concentration and memory; but would seem to be able to do light
work activities with these limitations."   (Tr. 444).   In
response, the vocational expert concluded that such a person
could perform work as a construction manager, a recreational aide
of which there are 2,400 jobs locally and 125,000 jobs

nationally, a shipping and receiving weigher of which there are 700 jobs locally and 500,000 jobs nationally, and a router of which there are 8,000 jobs locally and 450,000 jobs nationally. (Tr. 444-446).

Plaintiff's attorney then posited a hypothetical which limited the person to walking for five to ten minutes, standing for five minutes at a time, sitting for half and hour, lifting only ten pounds and needing breaks to lie down for a half an hour more than once a day.  The vocational expert indicated that such a person could not sustain employment.  (Tr. 446-447).

In his decision dated November 21, 2006, the A.L.J. found that Plaintiff suffered from an affective disorder, lumbar degenerative disc disease, and COPD which are "severe" impairments, but which do not meet or medically equal a listing. The A.L.J. also found that Plaintiff's allegations regarding the intensity, duration and limiting effects of his symptoms were not entirely credible in light of the medical evidence.  The A.L.J. further found that Plaintiff had the residual functional capacity to lift/carry twenty pounds, stand/walk for six hours in an eight hour day, sit for six hours in an eight hour day and perform jobs not requiring complex or detailed tasks.  Based on this residual functional capacity, the A.L.J. determined that Plaintiff could not perform his past relevant work which required more than light exertion.  The A.L.J. then determined that prior to April 17,

2006, Plaintiff was not disabled because there was a significant number of jobs in the national economy that he could have performed, but that after that date, which is the date Plaintiff's age category changed, Plaintiff could not perform a significant number of jobs in the national economy.  The latter conclusion was reached by application of Medical-Vocational Rule 202.06.  (Tr. 9-21).

### STANDARD OF REVIEW

Findings of fact made by the Commissioner of Social Security are conclusive, if they are supported by substantial evidence. Accordingly, judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision.  Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).  In making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record.  Id.  In other words, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence.  Id. at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence.  As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Pierce
v. Underwood, 487 U.S. 552, 555 (1988).

With regard to the Supreme Court's definition of
"substantial evidence," the Court of Appeals for the Third
Circuit has further instructed, "A single piece of evidence will
not satisfy the substantiality test if the [Commissioner] ignores
or fails to resolve a conflict created by countervailing
evidence.  Nor is evidence substantial if it is overwhelmed by
other evidence . . . or if it really constitutes not evidence but
mere conclusion." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir.
1983).  Thus, the substantial evidence standard embraces a
qualitative review of the evidence, and not merely a quantitative
approach.  Id.; Smith v. Califano, 637 F.2d 968, 970 (3d Cir.
1981).

## DISCUSSION

### I.   Evaluation Of Disability Claims

Within the meaning of social security law, a "disability" is
defined as the inability to do any substantial gainful activity
by reason of any medically determinable physical or mental
impairment, which can be expected to result in death, or which
has lasted or can be expected to last, for a continuous period of
not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A),
1382(c)(a)(3).  To be found disabled, an individual must have a
"severe impairment" which precludes the individual from

performing previous work or any other "substantial gainful activity which exists in the national economy."  20 C.F.R. §§ 404.1505, 416.905.   In order to qualify for disability insurance benefits, the claimant must establish that he or she was disabled prior to the date he or she was last insured.  20 C.F.R. § 404.131, Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).  The claimant bears the initial burden of proving disability.  20 C.F.R. §§ 404.1512(a), 416.912(a); Podeworthy v. Harris, 745 F.2d 210, 217 (3d Cir. 1984).

In determining whether a person is disabled, the Regulations require the A.L.J. to perform a sequential five-step analysis. 20 C.F.R. §§ 404.1520, 416.920.  In step one, the A.L.J. must determine whether the claimant is currently engaged in substantial gainful activity.  In step two, the A.L.J. must determine whether the claimant is suffering from a severe impairment.  If the claimant fails to show that his or her impairment is severe, he or she is ineligible for benefits. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

If the claimant's impairment is severe, the A.L.J. proceeds to step three.  In step three, the A.L.J. must compare the medical evidence of the claimant's impairment with a list of impairments presumed severe enough to preclude any substantial gainful work.  Id. at 428.  If the claimant's impairment meets or equals a listed impairment, the claimant is considered disabled.

If the claimant's impairment does not meet or equal a listed impairment, the A.L.J.'s analysis proceeds to steps four and five. Id.

In step four, the A.L.J. is required to consider whether the claimant retains the residual functional capacity to perform his or her past relevant work. Id. The claimant bears the burden of establishing that he or she cannot return to his or her past relevant work. Id.

In step five, the A.L.J. must consider whether the claimant is capable of performing any other available work in the national economy. At this stage the burden of production shifts to the Commissioner, who must show that the claimant is capable of performing other work if the claimant's disability claim is to be denied. Id. Specifically, the A.L.J. must find that there are other jobs existing in significant numbers in the national economy, which the claimant can perform consistent with the claimant's medical impairments, age, education, past work experience and residual functional capacity. Id. In making this determination, the A.L.J. must analyze the cumulative effect of all of the claimant's impairments. At this step, the A.L.J. often seeks the assistance of a vocational expert. Id. at 428.

## II. Whether The A.L.J.'s Decision Is Supported By Substantial Evidence

By his Motion, Plaintiff contends that the A.L.J.'s decision is not supported by substantial evidence. Specifically,

Plaintiff contends that the A.L.J. (1) failed to consider Plaintiff's functional capacity evaluation ("FCE") of August 2002, which demonstrates that he was limited to sedentary jobs; (2) failed to consider the opinion of Plaintiff's treating physician, Dr. Aviado, concerning his long time hip condition; (3) erred in finding that Plaintiff's bilateral degenerative arthritis of the hips was not a severe impairment; (4) failed to properly apply the Grids given Plaintiff's borderline age, and (5) failed to properly and specifically analyze the evidence.

Reviewing the A.L.J.'s decision, the Court concludes that a remand is required as a result of the A.L.J.'s failure to consider relevant and probative evidence. In particular, the A.L.J. stated in his decision that "no treating source has indicated the claimant is incapable of performing work." (Tr. 18). However, Dr. Aviado, Plaintiff's long time treating physician for his hip condition completed a Medical Certification on March 3, 2004, opining that Plaintiff could not work for more than 12 months. (Tr. 204). Defendant contends that the A.L.J. was not required to accept this opinion because it was contrary to the objective medical evidence in the record, did not specify any functional limitations, and the ultimate decision regarding whether a plaintiff is disabled rests with the Commissioner. While the Court recognizes that the latter is a legally correct statement, this does not mean that the A.L.J. can ignore the

opinion of a treating physician without any explanation or discussion.  In fact, it is an error of law to do so.[1]  <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999) ("Notably, it is an error of law to reject the treating physician's opinion without an adequate explanation.")  Further, it may well be that Defendant's arguments regarding the value of Dr. Aviado's opinion are valid; however, that is precisely that type of analysis that should have been provided by the A.L.J. in the first instance in explaining whether to accept or reject Dr. Aviado's opinion, and the Court cannot substitute Defendant's post-decision arguments for the analysis that should have been undertaken by the A.L.J. at the time he rendered his decision.

In addition, to the absence of any analysis regarding the opinion of Plaintiff's treating physician, the Court also notes that the A.L.J. failed to consider the August 2002 FCE prepared by one of Plaintiff's physical therapists regarding his hip condition indicating that Plaintiff could only perform sedentary level work.  Defendant contends that this assessment is not relevant because it was rendered prior to Plaintiff's hip

_____

[1]     Defendant relies on the recent decision of the Third Circuit in <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198 (3d Cir. 2008), for the proposition that the A.L.J. need not cite to all the evidence presented by a plaintiff.  However, <u>Johnson</u> makes clear that while the A.L.J. need not discuss irrelevant evidence, the "A.L.J. may not reject pertinent or probative evidence without explanation."  <u>Id.</u> at 204.  In the Court's view, the opinions of Plaintiff's treating physician and treating therapist fall within the ambit of pertinent, probative evidence that must at least be acknowledged by the A.L.J. in his decision.

15

replacement and "does not accurately reflect Plaintiff's functional abilities during the majority of the relevant time period." (D.I. 14 at 14). However, as Plaintiff points out, the relevant time period in this case began on March 18, 2001, and therefore, the FCE is relevant to at least two years of the relevant time period preceding Plaintiff's 2003 hip replacement. That Plaintiff's hip condition may have improved post-replacement does not diminish the probative value of the FCE for the period prior to the replacement. To the extent Defendant contends that it is impossible to determine if the therapist's definition of sedentary meets the Administration's definition, the Court concludes that this analysis goes to the weight to be accorded to the opinion as reconciled with the other relevant medical evidence in the record at the time, an analysis which rests with the A.L.J. in the first instance.[2] Indeed, the opinion of a treating therapist is considered probative evidence, 20 C.F.R. § 404.1513(e), and courts have found error where the A.L.J. has ignored such evidence. Williams v. Apfel, 98 F. Supp. 2d 625, 631-632 (E.D. Pa. 2000) (remanding where the A.L.J. failed to consider evidence from a non-medical source like a social worker

---

[2]     To the extent that the A.L.J. required additional information to understand the therapist's evaluation, the A.L.J. should have attempted to contact the therapist for further clarification and/or development of the record. 20 C.F.R. § 404.1512(e)(1); Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995).

because by failing to consider the report, the court could not determine whether the A.L.J. inadvertently failed to mention the report or intentionally decided not to give it significant weight), see also Dixon v. Barnhart, 2005 WL 113411, *6 (E.D. Pa. 2005).

In light of the foregoing deficiencies in the A.L.J.'s analysis, the Court cannot conclude that the A.L.J.'s decision that Plaintiff was not disabled prior to April 17, 2006, is supported by substantial evidence.  Accordingly, the Court concludes that this matter must be remanded for further consideration of and explanation for the rejection or acceptance of relevant evidence by the A.L.J.

## CONCLUSION

For the reasons discussed, the Court will deny Defendant's Cross-Motion For Summary Judgment and grant Plaintiff's Motion For Summary Judgment.  The decision of the Commissioner dated November 21, 2006, will be reversed and this matter will be remanded to the A.L.J. for further findings and/or proceedings consistent with this decision.

An appropriate Order will be entered.

17